NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIACI SAINT HONORE,<br><br>Plaintiff,<br><br>v.<br><br>M/V MSC MARIA ELENA, her engines, tackle, appurtenances, etc., *in rem* and EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.; MEDITERRANEAN SHIPPING COMPANY, S.A.; and WEST END EXPRESS CO., INC., *in personam*,<br><br>Defendants. | Civ. Action No. 21-1460 (EP) (JSA)<br>(*Lead Docket*)<br><br>*Consolidated for Discovery and Pretrial Purposes Only With*: 21-4620 (EP) (JSA); 21-1907 (EP) (JSA); 21-9541 (EP) (JSA); 21-8570 (EP) (JSA); 21-4301 (EP) (JSA); 21-3909 (EP) (JSA); 21-11254 (EP) (JSA); 21-12285 (EP) (JSA); and 21-11748 (EP) (JSA)<br><br>**OPINION & ORDER** |

**JESSICA S. ALLEN, U.S.M.J.**

Plaintiff, Siaci Saint Honore ("Plaintiff"), filed these ten cases,[1] alleging theft of cosmetics in overseas container shipments. The cases have been consolidated for discovery and pretrial purposes only. (ECF No. 34).

Before the Court are (1) Defendant Expeditors International of Washington, Inc.'s ("Expeditors") motion to transfer only Plaintiff's claims against Expeditors to the United States District Court for the Western District of Washington, pursuant 28 U.S.C. § 1404(a) (ECF No.

---

[1] The ten cases are: *Siaci Saint Honore v. M/V MSC Maria Elena*, 21-1460 (EP) (JSA); *Siaci Saint Honore v. M/V MSC Maria Elena*, 21-4620 (EP) (JSA); *Siaci Saint Honore v. M/V Lotus*, 21-1907 (EP) (JSA); *Siaci Saint Honore v. M/V Sealand Illinois*, 21-9541 (EP) (JSA); *Siaci Saint Honore v. Expeditors International of Washington*, 21-8570 (EP) (JSA); *Siaci Saint Honore v. Expeditors International of Washington*, 21-4301 (EP) (JSA); *Siaci Saint Honore v. M/V Maersk Kowloon,* 21-3909 (EP) (JSA); *Siaci Saint Honore v. M/V Bilbao Bridge*, 21-11254 (EP) (JSA); *Siaci Saint Honore v. M/V Berlin Bridge*, 21-12285 (EP) (JSA); *Siaci Saint Honore v. M/V CSCL Syndey*, 21-11748 (EP) (JSA).

69); and (2) Plaintiff's cross-motion for jurisdictional discovery (ECF No. 70). Both motions are opposed.[2] No oral argument was held. *See* Fed. R. Civ. P. 78(b). For the reasons stated below, Expeditors' motion to transfer is **DENIED**, and Plaintiff's motion for jurisdictional discovery is **DENIED AS MOOT**.

I.  **BACKGROUND**

As detailed in all of the ten Second Amended Complaints ("SACs"), Plaintiff filed each action on behalf of its insured, Kendo Holdings Inc. ("Kendo"). (*See generally* SACs). The SACs allege theft of Kendo's cosmetic goods during ten overseas shipments occurring between January 2020 and May 2020. According to Plaintiff, Expeditors, a Washington-based corporation with a New Jersey office, arranges transit of cargo with ocean carriers, who then transport the cargo. (SAC ¶¶ 2, 7; ECF No. 36).

The SACs contain the same basic allegations[3]—that is, (1) Expeditors issued a Seaway Bill[4] for transportation of cosmetics inside a sealed container from Milan, Italy, to the Port of New York/New Jersey (the "Port") (SAC ¶ 14); (2) Expeditors hired Defendant West End for the drayage of the container from the Port to its final destination in Monroe Township, New Jersey

---

[2] Expeditors filed its motion to transfer only in the lead docket, 21-1460 (EP) (JSA), but it seeks to transfer all of Plaintiff's claims against Expeditors, in all cases, to Washington. Both Plaintiff and co-Defendant West End Express Company ("West End") oppose Expeditors' motion to transfer. In turn, Expeditors opposes Plaintiff's cross-motion for jurisdictional discovery. Unless noted otherwise, citations herein to the Second Amended Complaint and any briefs refer to filings in the lead docket, 21-1460 (EP) (JSA).

[3] The allegations in the SACs spanning all ten cases differ in terms of, for example, the Seaway Bill numbers and the number of pallets of cosmetics shipped and allegedly stolen. The Court recites only those limited overlapping factual allegations and procedural background relevant to determine the motions to transfer and for jurisdictional discovery in all ten cases.

[4] In the SACs, Plaintiff references the Seaway Bill as the operative breached contract, giving rise to Plaintiff's claims against Expeditors in each of the ten cases. (*See* SAC ¶ 13). The Court refers to the Seaway Bill at issue in the lead case, 21-1460 (EP) (JSA), which is Seaway Bill #6400179345. (*Id.*) However, the Court's analysis applies to each of the ten Seaway Bills at issue in the other nine consolidated cases as they all contain the same disputed forum selection clauses.

(SAC ¶¶ 17-18); and (3) each shipment arrived with missing product units, evidencing "theft and pilferage" in transit. (SAC ¶ 19).

Each of the ten SACs contain, at least, the same four primary causes of action: (1) breach of contract; (2) negligence; (3) breach of bailment; and (4) conversion.[5] However, as alleged in the SACs, the causes of action are admiralty and maritime claims, and thus Plaintiff asserts that admiralty jurisdiction exists over its claims. (SAC ¶ 11).

## II.   THE MOTIONS

Expeditors moves to transfer only Plaintiff's claims against Expeditors to the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 1404(a). (ECF No. 69). Preliminarily, the Court notes that Expeditors' and Plaintiff's submissions do little to assist the Court in determining the appropriateness of transfer. They do not clearly articulate their respective positions on the enforceability of the forum selection clause, let alone what impact, if any, the clause has on transferring Plaintiff's claims.

As best can be gleaned from its motion papers, Expeditors contends that the applicable Seaway Bill[6] references terms and conditions that include a mandatory forum selection clause, requiring any suit arising thereunder be brought in either the United States District Court for the Western District of Washington or the Superior Court of the State of Washington sitting in King County. (*See* Expeditors' Br. at 3; Gillespie Decl., ¶ 3 & Ex. 2; ECF No. 69-2, 69-4) (the "forum selection clause")). Expeditors argues that this mandatory forum selection clause must be

---

[5] Some of the suits contain additional claims, including claims of "warehouseman liability" against Defendants Mediterranean Shipping Company SA ("MSC") and West End. (*See* Civ. A. Nos. 21-1907 (EP) (JSA); 21-3909 (EP) (JSA); 21-11254 (EP) (JSA); and 21-12285 (EP) (JSA)).

[6] Expeditors attaches the single page Seaway Bill to the Declaration of its Supervisor, Risk Management and Insurance, Collen Gillespie ("Gillespie Decl."). (*See* Gillespie Decl., ¶ 2 & Ex. 1; ECF Nos. 69-2, 69-3).

3

enforced, and thus Plaintiff's claims against Expeditors must be transferred pursuant to 28 U.S.C. § 1404(a).

In opposition, Plaintiff's argument appears to be two-fold. First, Expeditors has not established the inclusion of a forum selection clause in the Seaway Bill. (Pl.'s Br. 3). More specifically, Plaintiff contends the single page document is unaccompanied by any terms and conditions. Plaintiff continues that the actual forum selection provision is part of a separate nineteen page document, that is the bill of lading. (Pl.'s Br. 3). According to Plaintiff, based on this alleged ambiguity, in the event the transfer motion is granted, jurisdictional discovery is needed to determine whether the Seaway Bill contains a forum selection provision. (*Id*. at 4). Second, Plaintiff and West End together argue,[7] among other things, that Expeditors' forum selection clause, even if valid, is not mandatory but rather is permissive, and thus transfer is not warranted.[8] (West End's Br. at 4; Pl.'s Br. 1). Additionally, West End argues that if the Court were to find that the forum selection clause is mandatory, the case should be severed and only Plaintiff's claims against Expeditors should be transferred since the clause does not apply to West End, a non-contracting party.[9] (West End's Br. 1, 26).

Expeditors replies that the language of the terms and conditions contained in its standard seaway bills and bills of lading are "functionally identical" for purposes of the motion and contain

---

[7] Plaintiff purports to "incorporate by reference" West End's opposition brief and arguments therein. (Pl.'s Br. 1).

[8] West End further contends that it is not subject to the forum selection clause under the framework established by the Third Circuit in *In re: Howmedica Osteonics Corp.*, 867 F.3d 390 (3d Cir. 2017), and that no personal jurisdiction exists over West End in Washington. (West End's Br. at 11-26).

[9] Expeditors does not address severance in its moving brief and makes only a passing reference to severance and Federal Rule of Civil Procedure 21 in its reply papers without analyzing the Rule or the *Howmedica* framework. (Expeditors Reply Br. 7-8). In that vein, Expeditors merely agrees with West End that severance of Plaintiff's claims is appropriate. (*Id.*)

4

"identical forum selection language." (Expeditors' Reply Br. at 2; Sur-Reply at 1). Expeditors further disputes that the forum selection clause is permissive. (Expeditors Reply Br. 4-5).[10]

In sur-opposition, Plaintiff argues that this case has connections to New Jersey, and thus should proceed in New Jersey. (Plaintiff's Sur-Opposition at 1). What remains unclear throughout its opposition papers is whether Plaintiff challenges the enforceability of the identified forum selection clause (whether part of the Seaway Bill or the bill of lading) or merely disagrees that the forum selection clause is mandatory rather than permissive as this distinction changes the analysis under Section 1404(a). Nevertheless, this Court need not resolve this ambiguity in Plaintiff's submissions because even if Plaintiff is challenging the enforceability of the forum selection clause and the Court were to find it enforceable,[11] this Court concludes, as detailed below, that the clause is permissive not mandatory. Further, as discussed below, given the forum selection clause's permissive nature, the Court finds that the Third Circuit's holding in *In re: Howmedica Osteonics Corp.*, 867 F.3d 390 (3d Cir. 2017), is inapplicable. Accordingly, the transfer analysis does not turn solely on the inclusion of the forum selection clause.

## III. DISCUSSION

### A. Legal Standard

At the outset, the Court notes that the parties do not dispute that admiralty jurisdiction

---

[10] Expeditors further submits that Plaintiff has waived any right to oppose the transfer motion based on the plain language of the forum selection provision. (*See* Expeditors Reply Br. at 7). The Court does not construe Expeditors' motion as seeking to transfer "to a district to which all parties have consented." 28 U.S.C. § 1404(a). Clearly, there is no consent among all parties. In any event, by its own admission, Expeditors' motion is characterized as one based on the enforceability of a mandatory forum selection clause not on consent. (*See* Expeditors' Br. at 1 & Sur-Reply at 1).

[11] If the validity of a clause is challenged, the reviewing court must determine whether the forum selection provision is valid, considering the factors set forth by the Supreme Court in *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10-18 (1972). *See Maaco Franchising, Inc. v. Tainter*, 2013 WL 2475566, at *3–5 (E.D. Pa. June 10, 2013) ("As a preliminary matter, it is necessary to determine whether the forum selection clause is valid.").

exists over this civil action. To that end, when a case is filed in a proper venue, Section 1404(a) confers federal courts with authority to transfer "any civil action" to another district "where it may have been brought," when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). Section 1404(a) "applies to admiralty actions despite the statutory language referring to 'civil' actions." *Beaumont v. Vanguard Logistics Servs. (USA) Inc.*, 2022 U.S. Dist. LEXIS 127632, *5 (D.N.J. Jul. 19, 2022).

The decision to transfer a case under Section 1404(a) rests within the sound discretion of a district court. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973); *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.,* 98 F. Supp. 2d 560, 564 (D.N.J. 2000). The purpose of Section 1404(a) "is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses . . . .'" *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

As directed by the Third Circuit Court of Appeals in *Jumara*, the reviewing court must balance private and public interest factors to determine whether the litigation would more conveniently proceed and the interests of justice would be better served by a transfer. *See Jumara v. State Farm Ins. Co.*, 55 F. 3d 873, 879 (3d Cir. 1995). The moving party bears the burden of establishing "both the propriety of venue in the transferee district and jurisdiction over all of the defendants." *LG Elecs. Inc. v. First Int'l Computer*, 138 F. Supp. 2d 574, 586 (D.N.J. 2001) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)). Once the court determines that jurisdiction and venue would be proper in the transferre district, the court, then, must consider two

sets of factors identified by the Third Circuit in *Jumara*.[12]  *See Jumara*, 55 F.3d at 879.

As noted previously, even assuming the identified forum selection clause potentially applies, it appears the thrust of the parties' dispute turns on whether the clause is mandatory or permissive.  Accordingly, the Court turns to address this issue.

**B.      Forum Selection Clause: Permissive or Mandatory**

Even after a finding of applicability, the Court must still construe the forum selection clause to determine if the clause at issue is permissive or mandatory.  *See Becton Dickinson & Co. v. Medline Indus.*, 2022 WL 2383722, at *4 (D.N.J. Apr. 28, 2022) (Vazquez, J.); *Meridian Consulting Corp. v. Eurotec Can. Ltd.,* 2021 WL 689132, at *9 (D.N.J. Feb. 22, 2021) (McNulty, J.).  This distinction impacts "the traditional Section 1404(a) analysis."  *Becton Dickinson & Co.,* 2022 WL 2383722, at *8.  If the forum selection clause is mandatory, then the "parties' contractual choice of forum must be 'given controlling weight in all but the most exceptional cases.'"  *Id.* (quoting *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 59-60 (2013) (internal citation omitted)).  Accordingly, the Plaintiff's choice of forum would be afforded no weight, and the Court would not consider the private interest factors as part of a traditional Section 1404(a) analysis; instead, the Court would consider only the public interest factors.  *See Alt. Marine*, 571 U.S. at 64; *Becton Dickinson & Co.,* 2022 WL 2383722, at *8-9.

Several courts, within and outside of this District, have noted that neither the Supreme Court nor the Third Circuit have addressed whether the *Atlantic Marine* analysis applies to permissive forum selection clauses.  These same courts also have construed *Atlantic Marine* as

---

[12] West End also disputes that the courts in Washington have personal jurisdiction over it.  Expeditors does not address this issue having moved to transfer only Plaintiff's claims against Expeditors.  In any event, the Court has the discretion "to address convenience-based venue issues" and "suspend concerns about other threshold issues such as … personal jurisdiction…."  *In re: Howmedica Osteonics Corp.*, 867 F.3d at 404 n.8 (citing *Sinochem International Co. v. Malaysia International Shipping Co.*, 549 U.S. 422, 425 (2007)).

applying only to mandatory forum selection clauses, and thus have declined to apply its holding to permissive forum selection clauses. *See, e.g., Becton Dickinson & Co.*, 2022 WL 2383722, at *9-11 (Vazquez, J.) ("Neither the Supreme Court nor the Third Circuit has addressed whether the *Atlantic Marine* analysis applies to a permissive forum selection clause. However, courts within this district appear to apply a traditional § 1404(a) analysis when presented with a permissive forum selection clause….Because the clause is permissive, the Court applies a traditional Section 1404(a) analysis.") (collecting cases); *Meridian Consulting Corp.*, 2021 WL 689132, at *11 (McNulty, J.) (same); *Toll Global v. Curtis Int'l*, 2021 WL 1702832, at *3-4 (D.N.J. Jan. 5, 2021) (Arleo, J.) (same); *September Props. LLC v. Millionaire Gallery, Inc.*, 2018 U.S. Dist. LEXIS 158753, at *10-11 (E.D. Pa. Sept. 18, 2018) (Brody, J.) (same); *Networld Comm. Corp. v. Croatia Airlines, D.D.*, 2014 WL 4724625, at *8 (D.N.J. Sept. 23, 2014) (Wigenton, J.) (same). In short, the weight of persuasive authority in this Circuit demonstrates that the *Atlantic Marine* analysis has been applied only to mandatory forum selection clauses.

   Guided by this authority, this Court considers whether the disputed forum selection clause is mandatory or permissive. A permissive forum selection clause "authorizes litigation in a particular forum but does not prohibit litigation elsewhere." *Dawes v. Pub. Am. LLP*, 563 Fed. Appx. 117, 118 (3d Cir. 2014). Clauses that only specify a forum are treated as permissive. *See Int'l Bus. Software Solutions v. Sail Labs Tech.*, 440 F. Supp. 2d 357, 363 n.2 (D.N.J. 2006). A permissive clause "merely specifies the court empowered to hear litigation . . . [and] allows parties to air any dispute in that court without requiring them to do so." *Id.* at 363 n.2 (internal quotation omitted).

8

In contrast, "[a] mandatory forum selection clause . . . dictates an exclusive forum for litigation under the contract."[13] *Dawes*, 563 Fed. Appx. at 118. A mandatory forum selection clause evinces the parties' intention to make "a particular state or court as having <u>exclusive</u> jurisdiction over disputes arising out of the parties' contract and their contractual relationship." *Int'l Bus. Software Solutions*, 440 F. Supp. 2d at 363 n.1 (emphasis added). An example of a mandatory clause is one that states that a dispute "shall" be decided in a particular forum. *See Union Steel America Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 687 (D.N.J. 1998). Generally, mandatory forum selection clauses have "a requirement that disputes *shall be* submitted to the jurisdiction of [particular] courts," or contain terms such as "'exclusive,' 'sole,' or 'only.'" *Meridian Consulting Corp.,* 2021 WL 689132, at *11 (*quoting K&V Si. Co. v. BMW*, 314 F.3d 494, 500 (10th Cir. 2002) (collecting cases) (citations omitted).

Here, the disputed forum selection clause provides as follows:

> 27. LAW; DISPUTES; VENUE; SEVERABILTY; ETC. (a) This Bill of Lading shall be governed by and construed in accordance with the internal Laws of the State of Washington (excluding its Laws relating to conflicts of law), except as the same may be governed by the federal Law of the United States. MERCHANT IRREVOCABLY CONSENTS TO NON-EXCLUSIVE JURISDICTION AND VENUE FOR LEGAL PROCEEDINGS RELATED TO ALL CLAIMS AND DISPUTES ARISING FROM OR IN CONNECTION WITH THIS BILL OF LADING OR THE GOODS, WHETHER UNDER FEDERAL, STATE, LOCAL, OR FOREIGN STATUTES, REGULATIONS, OR COMMON LAW, IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON OR THE SUPERIOR COURT OF THE STATE OF WASHINGTON SITTING IN KING COUNTY. MERCHANT AND CARRIER HEREBY CONSENT TO THE COMMENCEMENT AND TRANSFER OF ALL SUCH LEGAL PROCEEDINGS TO SUCH COURTS. Merchants irrevocably consents to the commencement and to the transfer of venue in any or all such actions to any other venue in which Carrier is a party to a legal action brought by itself or a third-party that arises from or is connected with the Goods, their carriage, loading, unloading, handling, or storage, or loss, damage, or delay related to any of the Goods. The Merchant waives all defenses based on this inconvenience of forum in all actions commenced in the venues agreed to under this Bill of Lading . . . .

---

[13] Again, "[i]f the forum selection clause [is] [] mandatory, it would be entitled to a presumption of enforceability." *Dawes*, 563 Fed. Appx. at 118 n.3.

(Gillespie Decl., Ex. 2).

The plain language of the clause states that a merchant "irrevocably consents to *non-exclusive* jurisdiction and venue" in Washington.  (*Id.*) (emphasis added).  Expeditors seems to concede that this language may be construed as permissive, but submits that when the entire paragraph is read, as a whole, the clause is mandatory.  (Expeditors' Reply Br. 6-7).  This Court disagrees.

The significance of the "non-exclusive jurisdiction and venue" language cannot be ignored.  This phrase is determinative as it simply does not require that actions be brought exclusively in Washington courts.  It lacks any language about exclusivity or prohibitions against litigating disputes elsewhere. *See Dawes*, 563 Fed. Appx. at 118 ("A mandatory forum selection clause . . . dictates an exclusive forum for litigation under the contract.").  Several courts interpreting similar "non-exclusive jurisdiction" language have found the forum selection clause is permissive.  *See, e.g., Becton Dickinson Co*, 2022 U.S. Dist. LEXIS 77382, at *10 ("clause provides that New Jersey is a 'non-exclusive' forum and fails to include 'some further language indicating the parties' intent to make the jurisdiction exclusive.'"); *Kim v. M&T Bank,*, 2018 U.S. Dist. LEXIS 145807, at * 16 (D.N.J. Aug. 28, 2018) (finding that clause "provides for the 'nonexclusive' jurisdiction of New Jersey courts," and thus finds the clause is permissive); *Networld Comm. Corp.*, 2014 WL 4724625, at *7 (finding that "[t]he inclusion of the modifier 'which jurisdiction shall be non-exclusive[,]'" however, evidences the parties' intent that Zagreb is not the only forum in which disputes arising under the contract can be brought.").

Even if the Court were to consider the other language on which Expeditors relies, such language still supports a finding that the clause is permissive.  According to Expeditors, the sentence: "Merchant and carrier hereby consent to the commencement and transfer of all such legal

10

proceedings to such courts . . .[,]" compels transfer.[14] Expeditors' contention misses the mark. Language that merely provides for a party to consent to a jurisdiction does not render a forum selection clause mandatory. Indeed, other courts in the Third Circuit have interpreted such language to be permissive. *See, e.g.*, *Meridian Consulting Corp.,* 2021 WL 689132, at *27 (finding that the Agreement stating that the parties "agree to the jurisdiction of the Courts of the City of Hamilton, Province of Ontario," is permissive not mandatory); *September Props. LLC v. Millionaire Gallery, Inc.*, 2018 U.S. Dist. LEXIS 158753, at * 10-11 (E.D. Pa. Sept. 18, 2018) (concluding that "'Tenant consents to venue and personal jurisdiction in the courts of Florida and/or Pennsylvania, and waives any right to a jury in any trial,'" is permissive because it confers jurisdiction in both states "but it does not exclude jurisdiction elsewhere."); *De Lage Landen Fin. Servs. v. Regan Techs. Corp.,* 2016 U.S. Dist. LEXIS 169687, at *6-7 (E.D. Pa. Dec. 7, 2016) (interpreting similar consent to jurisdiction and waiver of objection to venue language to be permissive).

Expeditors' reliance on *Union Steel* is misplaced as the clause at issue there expressly stated that "any dispute *shall* be decided" in the forum specified. *See* 14 F. Supp. 2d at 687. "Shall" is hallmark language of a mandatory forum selection provision. *See Wall St. Aubrey Golf, LLC v. Aubrey*, 189 Fed. Appx. 82, 85-86 (3d Cir. 2006). Expeditors' forum selection clause contains no such language. Nothing in the clause *requires* commencement of the parties' dispute in Washington or transfer of a case filed in another forum to Washington. *Universal Stabilization Tech., Inc. v. Advanced Bionutrition Corp.*, 2017 WL 1838955, at *7 (S.D. Cal. May 8, 2017) (collecting various cases holding that "irrevocably consents" is permissive).

---

[14] The remainder of the paragraph does not apply to this case as it pertains to (1) transfers to a venue where Expeditors has either filed a related action or been sued by a third-party, or (2) actions commenced in the venues set forth in the Bill of Lading (i.e., Washington). (*See* Gillespie Decl., Ex. 2; West End Br.'s at 8).

For the reasons stated above, the Court finds Expeditors' forum selection clause is permissive, and thus concludes that the clause does not require transfer of Plaintiff's claims against Expeditors pursuant to *Atlantic Marine* or *In re Howmedica Osteonics Corp.* [15] *See Toll Global Forwarding SCS (USA), Inc.*, 2021 WL 1702832, at * 4 (finding that applicable forum selection clause in reimbursement agreement was permissive, and thus "the modified Section 1404(a) analysis set forth in Atlantic Marine Construction, 571 U.S. at 49, and In re Howmedica Osteonics Corp., 867 F.3d 390, does not apply."). As such, the forum selection clause will be considered "only as one element . . . in weighing the interests of justice under Section 1404(a)." *Toll Global*, 2021 WL 1702832, at *4.

C.  **Venue**

The Court first must determine whether venue is proper in the transferee district. *Jumara*, 55 F.3d at 879. While the parties do not address the propriety of venue, the Court independently evaluates the appropriateness of venue in Washington. To that end, the Court finds that, if a proper basis existed to sever only Plaintiff's claims against Expeditors, those claims could have been brought in the Western District of Washington. Expeditors is a Washington corporation, and thus personal jurisdiction over Expeditors in the Western District of Washington appears to be undisputed. Likewise, subject matter jurisdiction would exist since this is an admiralty action. *See* 28 U.S.C. § 1333. Thus, only Plaintiff's claims against Expeditors could have been brought in the Western District of Washington, pursuant to 28 U.S.C. § 1391(b)(1) (venue is proper in any district

---

[15] In *Howmedica*, 867 F.3d at 404-05, the Third Circuit established a four factor framework for reviewing motions to transfer venue involving mandatory forum selection clauses applicable to some, but not all, parties. The *Howmedica* considerations include, among other things, evaluation of the impact of severance and the potential presence of indispensable parties under Federal Rule of Civil Procedure 19. *See id.* Here, the Court need not consider the *Howmedica* framework since the Court has already found the forum selection clause is permissive. *See Toll Global*, 2021 WL 1702832, at *4.

in which a defendant resides, if all defendants are residents of the state in which the district is located).

### D. The *Jumara* Factors

The first category of factors considers the private interests of the litigants and include: (1) "plaintiff's forum preference;" (2) "defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience to the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id*.

The second category of factors considers the public's interests and include: (1) "the enforceability of the judgment;" (2) "practical considerations that could make the trial easy, expeditious or inexpensive;" (3) "the relative administrative difficulty in the two for a resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" (5) "the public policies of the fora;" and (6) "the familiarity of the trial judge with applicable state law in diversity cases." *Id*. at 870-80 (internal citations omitted).

The list of factors in both the private and public categories is comprehensive. However, a Section 1404(a) analysis must be flexible and viewed based on the unique facts of the particular case. *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999) (citing *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988)). The movant bears the burden to establish the need for transfer. *Jumara*, 55 F.3d at 879. "The party seeking a transfer should support its motions with affidavits and other documentation that establishes that the interests of justice and convenience of the parties would best be served by a transfer." *One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.,* 987 F. Supp. 317, 326 (D.N.J. 1997) (citing *Plum Tree,* 488 F.2d at 755-

13

57). A district court should not transfer a case relying "entirely on the facts and conclusions asserted in [the movant's] motion." *Plum Tree, Inc.,* 488 F.2d at 757.

Expeditors' motion papers are devoid of any analysis of either the private or public factors. West End and Plaintiff devote little time to addressing them beyond disputing what weight should be afforded Plaintiff's choice of forum and whether New Jersey is the more convenient forum. This Court undertakes its own review of the relevant factors based on the limited information presented by the parties.

Considering the private interest factors first, plaintiff's choice of forum is generally entitled to deference. *See Sandvik v. Continental Ins. Co.*, 724 F. Supp. 303, 307-08 (D.N.J. 1989). However, the presence here of the permissive forum selection clause warrants less deference be given to Plaintiff's choice of forum. *Networld Communs., Corp.*, 2014 WL 4724625, at *13 (collecting cases). However, as the alleged thefts occurred either in transit and/or in New Jersey, New Jersey seems to have a connection to the underlying events giving rise to Plaintiff's claims. For that reason, Plaintiff's choice of forum tips slightly in favor of denying transfer.

As to the second factor, Expeditors' preference to litigate in Washington, this factor supports transfer. As to the third factor, whether the claim arose in another forum, in the SACs, Plaintiff alleges the thefts of the cargo occurred while in transit from Italy to the Port Authority of New York and New Jersey and/or before the cargo was received in Monroe, New Jersey. (SAC ¶¶ 13-16). There is no connection between the underlying allegations and the State of Washington. Accordingly, this private interest factor weighs against transfer.

Courts also consider the convenience of the parties and witnesses and the location of books and records. Neither Plaintiff nor Expeditors identify any witnesses or identify any difficulty transporting records to one district versus another. However, West End has identified fourteen

14

(14) witness drivers who hauled the subject containers, as well as West End's principals and officers, who are all located in New Jersey. (West End's Br. at 24). While Expeditors does not seek to transfer Plaintiff's claims against West End, the fact remains that West End's witnesses may have personal knowledge about the facts in support of Plaintiff's claims against Expeditors. As such, they may be called to testify. Thus, New Jersey is a more convenient forum for West End's and likely Plaintiff's purposes. In contrast, none of the parties have identified any witnesses who are located in Washington. Accordingly, this factor tips slightly in favor of denying transfer. Finally, since none of the parties have identified any difficulty with transporting records and documents to one district versus the other, the Court finds this factor is neutral.

Turning to the public interest factors, Plaintiff and Expeditors do not address any of these factors.[16] This Court's review of the relevant public factors confirms that these factors either disfavor transfer or are neutral. As none of the parties have addressed the first factor, it is presumed that a judgment will be enforceable in either forum. Accordingly, this first factor is neutral. However, practical considerations weigh against transfer. For one thing, severing Plaintiff's claims against Expeditors would result in related cases being tried in two different forums without the presence of Defendant Expeditors in the New Jersey action. Litigating the same case in two different forums could lead to conflicting results and would be an inefficient use of party and judicial resources. *See, e.g.*, *J.S. v. Dalton School, Inc.*, 2019 WL 161507, at *5 (D.N.J. Jan. 9, 2019). Thus, such practical considerations weigh against transfer.

As to the third factor, the parties have not presented any evidence regarding court congestion or administrative difficulty, and thus the court does not consider these issues in determining the appropriateness of transfer. The fourth factor is the local interest in deciding the

---

[16] West End addresses the public interest factors as part of its *Howmedica* analysis. (*See* West End's Br. 25-26).

15

controversy. While there is no clear center for this case, New Jersey appears to be more closely tied to the facts than Washington. First, New Jersey has an interest in the security of shipments received in its ports and transported within the state. Second, both Expeditors and West End have offices based in this District. New Jersey's interest in adjudicating these claims is far greater than Washington, which has virtually no connection or interest in a case involving the loss of shipments of goods from Italy to New Jersey beyond adjudicating claims against Expeditors, a Washington corporation. On balance, the majority of relevant public interest factors weighs against transfer.

Accordingly, after considering both the private and public interest factors as dictated by the Third Circuit in *Jumara*, this Court finds that Expeditors has not made any showing, let alone carried its burden of showing, that Plaintiff's claims against Expeditors should be transferred to the United States District Court for the Western District of Washington, pursuant to Section 1404(a).

## IV.     CONCLUSION

For the foregoing reasons, Expeditors' motion to transfer, pursuant to 28 U.S.C. § 1404(a), is **DENIED**. Plaintiff's cross-motion for jurisdictional discovery is **DENIED AS MOOT**.

The Clerk of the Court is requested to terminate the motions appearing at ECF Nos. 69 and 70.

s/Jessica S. Allen<br>
**Hon. Jessica S. Allen**<br>
**United States Magistrate Judge**

**DATED: November 15, 2022**

cc: Hon. Evelyn Padin, U.S.D.J.